TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00678-CR






Eugene Wilson, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF HARRIS COUNTY, 184TH JUDICIAL DISTRICT


NO. 781,952, HONORABLE WILLIAM HATTEN, JUDGE PRESIDING 






 Eugene Wilson appeals from his conviction for sexual assault. See Tex. Penal
Code Ann. § 22.011(a)(1) (West Supp. 2000). The jury found Wilson guilty of sexual assault and
assessed punishment at confinement for twenty-five years in the Texas Department of Criminal
Justice--Institutional Division. In two points of error, appellant contends the evidence was legally
and factually insufficient to support his conviction. We will affirm the trial court's judgment.


Factual Background



 After complainant left work at Wings-N-More a little after midnight on the morning
of Saturday, May 2, 1998, she went to a party at a co-worker's apartment. Appellant Wilson was
already at the party. Complainant knew who Wilson was because he occasionally came into
Wings-N-More to pick up his girlfriend who worked there. At about 1:00 a.m., complainant was
ready to leave but the co-worker who promised to walk her home had passed out. She left by
herself. Wilson followed her out, telling her that he would walk her home. Complainant said that
she had "never had much to do with" Wilson, but he had flirted with her once and asked her to
come to his apartment. Telling him she had a boyfriend, she refused his offer. They had not
talked at the party but she did not feel in danger as they started to walk to the apartment complex
in which she lived. As they arrived, complainant became uncomfortable because Wilson started
to tell her she should break up with her boyfriend; she told him she would be fine and he could
go. As she walked upstairs, she was hit on the back of her head and blacked out.

 She woke up on her back behind the trash dumpster in the complex's parking lot
with Wilson unzipping her shorts. She screamed and he punched her in the face with his fist. She
suffered a bloody lip and a chipped tooth. She blacked out again and awoke to find Wilson
penetrating her vagina from behind. She was aware of someone yelling for Wilson to leave her
alone. She screamed again. Wilson pushed her down on the asphalt, inflicting scrapes on her
arms and legs. Her next memory was waking up in the hospital. She identified Wilson as her
attacker when the police brought him by her hospital room and at trial.

 At approximately 3:00 a.m., Thomas Hildreth, who lived in the same complex, 
arrived home. As he got out of his car, he heard a "commotion" going on in the area of the
dumpster. He heard a woman screaming, "Get off me" and, "You're raping me." He saw an
Hispanic male standing and looking toward the dumpster. He asked what was going on and the
man replied, "Mira, mira." (1) Hildreth walked toward the dumpster yelling, "What's going on"
and, "Get out of there." As he approached the dumpster, he saw an upstairs neighbor out on the
balcony using a phone and saw another male neighbor come outside. He then saw a black male
coming out from behind the dumpster; Hildreth told him that the police had been called and told
the man to get out of there. The man jumped a fence and left the complex. Hildreth did not
attempt to approach complainant because he was afraid that he would cause her even more
distress. Hildreth identified Wilson at the scene and in court.

 John Eldridge, another neighbor, was watching television at about 3:00 a.m. when
he heard someone screaming, "Rape." He went outside. He too saw the Hispanic male simply
standing there looking toward the dumpster. Eldridge then walked toward the dumpster, asking
what was going on. He saw a black male emerge from behind the dumpster saying, "Yo, you
don't want none of this. This is my old lady. You don't have anything to say." Eldridge
identified Wilson at the scene and in court. (2)

 At around 3:00 a.m., Irene Jones, another resident of the complex, had just gone
to bed. She heard a woman screaming, "Rape," very loudly. She went outside on her balcony
and located the sound as coming from behind the dumpster. She called 911 and testified that the
911 operator could hear the screaming over the telephone. She saw a black male come out from
behind the dumpster but she could not see him clearly enough to identify. Jones went outside to
try to help complainant just as the paramedics arrived. She saw complainant, hysterical and
crying, behind the dumpster.

 When Catheryn Seglin, an emergency medical services technician, arrived on the
scene, she heard a woman screaming and crying. She found complainant behind the dumpster
with her pants and underwear around her ankles. Her fingernails were broken and Seglin thought
complainant had been fighting with someone. She described complainant as distraught and beaten
up. Seglin found a man's wallet close to the victim. The wallet contained photo identification
for Wilson that listed an address.

 Officer Eric Batton, a deputy on the scene, described complainant as "beaten up." 
Kenneth Allee, another police officer, testified that Hildreth and Eldridge identified Wilson from
the photo identification card found in the wallet. He testified that complainant, while in the
ambulance on the scene, identified Wilson. Officer Ron Rooth described Wilson's apprehension. 
Rooth and several other officers were dispatched to the address listed on the identification card,
which was one-quarter to one-third of a mile from complainant's complex. Wilson's girlfriend,
one of the apartment's residents, gave permission for the officers to enter and search the
apartment. After entering the apartment, Rooth opened the bedroom door. He saw a child in bed
sleeping and saw the defendant, face down and on the floor, partially underneath the bed. Rooth
arrested Wilson without resistance.

 At the hospital, medical records indicate that complainant was crying hysterically
and had been beaten up, leaving her with a swollen lip, dried blood on her face, and abrasions
on her arms and legs. DNA evidence collected at the hospital pursuant to sexual assault
examination procedures produced a match with Wilson. (3)

 Discussion



Legal Sufficiency


 In his first point of error, appellant contends the evidence was legally insufficient
to support the conviction. When the court reviews the legal sufficiency of a verdict, it does so
in the light most favorable to the verdict to determine whether a rational finder of fact could have
found all the elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S.
307, 319 (1979); Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998), cert. denied,
526 U.S. 1070 (1999). If there is evidence that establishes guilt beyond a reasonable doubt and
if the factfinder believes the evidence, the reviewing court is not in a position to reverse the
judgment on sufficiency of the evidence grounds. See Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988). The jury as trier of fact is entitled to resolve any conflicts in the
evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any
particular evidence. See id.

 Wilson argues that the State failed to prove the elements of the offense beyond a
reasonable doubt. The elements of sexual assault that the State had to establish were that Wilson
intentionally or knowingly caused the penetration of complainant's sexual organ without her
consent. See Tex. Penal Code Ann. § 22.011(a)(1) (West Supp. 2000). The assault was without
consent if appellant compelled complainant to submit by the use of physical force or violence. 
See id. at § (b)(1). Wilson contends that there was a lack of medical evidence that complainant
was hit in the head as she claimed, therefore, he argues, her testimony was rendered so
unbelievable that the usual rule that appellate courts do not re-evaluate the credibility of a witness
should not apply. We disagree.

 We have detailed the evidence. Complainant knew who Wilson was and identified
him as her attacker. Two witnesses at the scene, who heard complainant's screams, identified
Wilson as the man who emerged from behind the dumpster. Complainant described the force
Wilson used against her and how her injuries were inflicted. Several witnesses described
complainant as "beaten up." Hospital records detailed her injuries. DNA evidence also tied
Wilson to the rape. His wallet was found at the scene and he was discovered attempting to hide
at the address listed on the photo identification. There is legally sufficient evidence to support the
conviction. We overrule Wilson's first point of error.


Factual Sufficiency

 When the court reviews the factual sufficiency of the evidence, it puts aside the
prism of the "light most favorable to the verdict." See Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd
untimely filed). The reviewing court considers all the evidence in a neutral light and reverses if
the verdict is so contrary to the overwhelming weight of the evidence as to be unjust. See
Johnson v. State, No. 1915-98, slip op. at 9 (Tex. Crim. App. Feb. 9, 2000); Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 134. The jury's verdict,
however, should still be accorded due deference so that the reviewing court does not, in effect,
become the thirteenth juror. See Clewis, 922 S.W.2d at 133. The appellate court does not
interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility
of testimony. Unless the record clearly reveals that a different result was appropriate, an appellate
court should defer to the jury's determination concerning what weight to give contradictory
testimonial evidence because the jurors' resolution of such conflicts often turns on an evaluation
of credibility and demeanor by the jury. See Johnson, slip op. at 12.

 Wilson basically asks that complainant be disbelieved because there is not medical
documentation that there was a lump on the back of the head where she said she had been struck. 
As discussed under point one, the record contains ample evidence to support Wilson's conviction. 
He points to nothing in the record that would cause a lack of confidence in the result reached by
the jury and would show that the verdict is contrary to the overwhelming weight of the evidence. 
We overrule point of error two.


Conclusion



 We have overruled both of appellant's points of error and hold that legally and
factually sufficient evidence supports appellant's conviction. Accordingly, we affirm the trial
court's judgment of conviction.



 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel, and Patterson

Affirmed

Filed: June 22, 2000

Do Not Publish
1. "Look, look."
2. Hildreth and Eldridge identified Wilson from his picture on a photo identification card found
in Wilson's wallet that was left at the scene. It is not clear from the record whether the
identification was a Texas driver's license or the photo identification card that the Department of
Public Safety issues to non-drivers. They also identified Wilson when police officers returned him
to the scene after his arrest.
3. The frequency of occurrence of Wilson's pattern: 1 in 30,300 African-Americans.



fore, he argues, her testimony was rendered so